## SUPREME COURT.

### Jacob Sharp agt. The Mayor, &c., of New York.

This court has power to relieve a party to an action pending in it, from a *judgment* or *order* obtained against him by reason of the *negligence, ignorance,* or *fraud* of his *attorney,* without any reference to an action against, or to the *responsibility* of the attorney.

It is only when the courts require of their attorneys and suitors the exercise of *entire good faith* in the prosecution or defence of actions that they discharge their whole duty to the community.

It is the right of a *municipal corporation,* by its proper officers, to apply to the court for protection, and it is the duty of the court to grant it, if it is made to appear that the conduct of their *counsel* is prejudicial to the rights of the city; especially, where the legislature has conferred upon the corporation counsel the management of all civil actions, independent of any directions from its officers.

Under the facts and circumstances shown in this case, *held,* that it was the duty of the corporation counsel, on application to him by the mayor and comptroller of the city of New York, to *appeal* to the general term from the judgment entered for a large amount against the city, upon a report of a referee at special term, and that the subsequent order of the special term, setting aside this judgment on motion of the comptroller, under the statute, was right. (*See s. c.,* 18 *How. Pr. R.,* 97 *and* 213.)

New York General Term, June, 1860.

Sutherland, Mullin and Leonard, *Justices.*

Appeal by plaintiff from an order of special term, setting aside the judgment entered in this action against the defendants. (*Reported* 18 *How. Pr. R.,* 97 *and* 213.)

D. Dudley Field, *for appellant.*

William Curtis Noyes, *for comptroller of the city.*

Rich Busteed and Wm. Fullerton, *for the corporation.*

By the court—Mullin, Justice. This court has power to relieve a party to an action pending in it from a judgment or order obtained against him by reason of the negligence, ignorance, or fraud of his attorney.

The rule formerly was, that the party injured by the neglect or misconduct of his attorney was compelled to

resort for relief to an action against the attorney, unless it was shown that the attorney was insolvent, in which event the court could relieve.

The remedy by action was a mere illusion, even against a solvent attorney, and hence the recent, and, in my opinion, the more just practice is, for the court to relieve the client, without reference to the responsibility of the attorney, when a proper case for granting relief is established.

There is no justice in permitting one party to obtain an undue advantage over another, through the neglect or misconduct of that other's attorney. Courts of law are not to be used by parties in effecting, through the forms of law, the ruin of a party, who has employed an incompetent, negligent, or unworthy attorney.

It is only when the courts require of their attorneys and suitors the exercise of entire good faith in the prosecution or defence of actions that they discharge their whole duty to the community.

In this case, the comptroller of the city made oath that the claim on which the action is based is unfounded and fraudulent, and that a good defence existed and still exists against the same. It further appears, that after the rendition of this large judgment against the city, both the comptroller and the then mayor applied to the corporation counsel to appeal from the judgment, entered on the report of the referee, to the general term, and that he refused.

The legislature had conferred on the department presided over by the corporation counsel the management of all civil actions brought by and against the city. He was not bound, therefore, to conform to the directions of either the mayor or comptroller, nor to follow their advice. Yet, the right conferred upon the corporation counsel did not place him beyond the control and direction of the court, if it appeared that his action, or omission to act, was injurious to the city. It is the right of the city officers to

apply to the court for protection, and it is the duty of the court to grant it, if it is made to appear that the conduct of their counsel is prejudicial to the rights of the city.

It becomes necessary to inquire into the conduct of the corporation counsel, in order to ascertain whether the rights of the city have been neglected or unfairly yielded in their defence of this action.

I will not go into a history of the case further than to refer to one or two facts which are disclosed by the papers, and which bear on the question under consideration.

The lease obtained by the plaintiff recites the resolution of the common council, on the 16th June, 1852, directing the leasing to plaintiff of the slip at the foot of Wall street, or so much thereof as belongs to the city. The lease, which is dated the first day of July, conforms to the resolution, and uses, in the leasing clause, the very words of the resolution—the same qualifying words are used again in the habendum clause. It is further provided by said lease as follows:

"And it is hereby mutually covenanted and agreed by, and between the parties to these presents, and these presents are upon the express understanding that nothing herein contained shall be taken or construed to operate as a covenant by said parties of the first part, or their successors for possession or quiet enjoyment by said party of the second part, &c., of the said ferry or right to ferriage, nor shall the same be taken or construed to interfere in any manner with any previous grants or rights, made by said parties of the first part  *  *  *  *  nor to operate further than to grant the possession of the estate, right, title, or interest, which the said parties of the first part may have, or lawfully claim, in said ferry and right to ferriage, by virtue of their charter," &c.

The plaintiff covenanted to pay to the city $20,000 per annum rent for the use of said ferry in quarter yearly payments.

At the time this lease was applied for, one Murray had or claimed the right to a portion of the slip, which rendered the slip useless for the purpose of a ferry. The right of Murray to the portion claimed by him, was established by a judgment of the superior court, and the plaintiff, in order to get the use of the whole slip, rented of Murray his portion of the slip at the annual rent of $4,000.

In October, 1853, parties owning the whole or some part of the interest of said plaintiff under said lease, applied to the common council to reduce the rent of said slip, and it was reduced to $5,000 per annum.

This fact was set up in the answer, but without any allegation as to whether the reduction, thus made, was in consideration of the claim of Murray to said slip. And it is certified, by the referee, that no evidence whatever was given on that subject before him.

The gravamen of the plaintiff's action is the misrepresentation made by the agents of the city, and by means of the maps in the street commissioner's office, that the city owned the whole slip, whereas, in truth and in fact, a portion was owned by said Murray.

The referee finds, as matter of fact, that plaintiff was misled in regard to the extent of the city's interest in the slip, and, as matter of law, that the possession of Murray was not notice to the plaintiff of his (Murray's) right.

Without deciding now whether the representations of the agents of the city were binding upon it, so as to give plaintiff a right of action, or whether the possession of Murray was notice to the plaintiffs of his (Murray's) rights, or whether the circumstances attending the reduction of the rent was legitimate evidence in the cause, or how far it might operate by way of defence to the action, it seems to me that each and all of the questions were so important, involved in so much doubt, as not only to justify, but to require counsel to take the opinion of the general term upon each and all of them.

So large a claim should not be submitted to, unless it is based upon such clear principles of right and justice, as to remove any serious doubt as to its validity.

When, therefore, the comptroller and mayor applied to the corporation counsel to appeal from this judgment, it was a request which he was in duty bound to grant.

It seems to me that no reason has been given why a judgment, recovered under these circumstances, should be permitted to stand. I will not assume to say whether the referee was right or wrong in his decisions on the legal questions involved, but I do say that the omission to prove the facts and circumstances attending the reduction of the rent, and the motives and inducements which led to it was a violation of professional duty, which the counsel owed to his client, the city.

I concur with Judge INGRAHAM, in his views as to the constitutionality of the act entitled " an act to enable the supervisors of the city and county of New York to raise money by tax," being chapter —, of laws of 1859. The provisions relating to applications to set aside judgments recovered against the city, are germain to the subject matter of the act, as disclosed in its title, and although the act may apply to judgments, the payment of which are not provided for by the act in question; yet it does properly apply to judgments then and thereafter to be rendered, and thus the constitutional objection is avoided. If any provision in regard to the setting aside of judgments or limiting the powers of the corporation counsel, could be incorporated in the act without coming in conflict with the act, then all its provisions must be deemed to be in force.

I do not deem it necessary, however, to pass upon the constitutional question. The court had and has ample power to protect the city, as it protects all other parties, from the consequences of the misconduct or neglect of their attorneys.

I am of the opinion, therefore, that the order of special term, setting aside the judgment, was right. It is due to the city that a full and fair opportunity be afforded to it to try the case; but it seems to me that upon the papers in this case, neither the plaintiff nor his counsel is chargeable with any fault in reference to the judgment, and if the city desires to retry the cause, it should pay to the plaintiff the costs of the former action, and of the motion.

When an action has been referred and tried by the referee upon the facts, and a report made by him in the cause, and a new trial is ordered, it is not ordinarily proper to send it back to the same referee, and for very obvious reasons—he has heard and seen the parties and their witnesses, he has formed his estimate of their credibility, and of the force and effect of their evidence, and the defeated party enters upon a new trial before him, with the views and prejudices of the referee all against him. This is a current which the party ought not to be required to struggle against. The parties do not stand equal before the referee. He is not indifferent between them.

. No one would think of trying a cause a second time before the same jury, and although an intelligent referee would be less likely to retain or act on his convictions received on the former trial, yet he is but a man, and with the best intentions, he may be unable wholly to lay aside or forget his bias.

For these reasons the practice is becoming quite general to vacate the orders of reference on granting a new trial on the application of either party, and to refer it to a new referee, if the cause is referable, or to retain it in court if it is not.

Whether a referee shall be retained or removed, when a new trial is ordered, is a question addressed to the discretion of the court, and which seems to me is not appealable.

This action was referable only on consent. When the court saw fit to take the case from the first referee, it could not supply the vacancy, and hence the case must go back upon the calendar, or be deemed and treated an arbitration.

It has not been suggested that this action had been turned into an arbitration by means of the reference; and, if not, the order of the judge at special term, setting aside the order of reference, was regular.

The order appealed from, must be affirmed.